UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

CURTIS CARTER,

                Plaintiff,

      - against -

FORDHAM AUTO SALES, INC. d/b/a
FORDHAM TOYOTA

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X



JUDGE SWEET

'08 (8 Civ.) CIV 3745

COMPLAINT

ECF CASE

PLAINTIFF DEMANDS
A TRIAL BY JURY

RECEIVED
APR 2 1 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff Curtis Carter ("Carter" or "plaintiff"), by his attorneys, Vladeck, Waldman,

Elias & Engelhard, P.C., complaining of defendant Fordham Auto Sales, Inc. d/b/a Fordham Toyota

("Fordham Toyota" or "defendant"), alleges:

## NATURE OF THE ACTION

    1.    Plaintiff brings this action to remedy race discrimination in employment and

retaliation under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981");

the New York State Human Rights Law, New York Executive Law § 296 et seq. (the "Executive

Law"); and the Administrative Code of the City of New York § 8-107 et seq. (the "City Law").

    2.    Plaintiff seeks injunctive and declaratory relief, compensatory and punitive

damages, and other appropriate equitable and legal relief.

JURISDICTION AND VENUE

3.     Pursuant to § 8-502(c) of the City Law, prior to filing this Complaint, plaintiff served a copy of the Complaint on the City of New York Commission on Human Rights and the City of New York Corporation Counsel.

4.     Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(3) and (4).  The Court has supplemental jurisdiction over the claims brought under the Executive Law and the City Law pursuant to 28 U.S.C. § 1367.

5.     As the unlawful practices complained of herein occurred within the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. § 1391.

PARTIES

6.     Carter, an African-American man, resides in Manhattan and is a current employee of defendant.

7.     Fordham Toyota is an automobile dealership with offices in Harlem and the Bronx.  It is an employer within the meaning of the Executive Law and City Law.  Upon information and belief, Fordham Toyota is a wholly-owned subsidary of the Bay Ridge Automotive Management Corp. ("BRAM").

FACTUAL ALLEGATIONS

8.     Carter began his employment with Fordham Toyota on March 27, 2007 as a Title and Registrations Clerk.  In that position, Carter was responsible for, among other things, determining that vehicles sold by defendant had proper title and registration and ensuring that such title and registration were properly transferred to purchasers.  Carter was assigned to work in Fordham Toyota's accounting department, which was located in defendant's offices in Harlem.

9.      From the outset of Carter's employment, his direct supervisor was Denise Vargas ("Vargas"), the accounting manager.  Other members of the accounting department who worked in the Harlem office were assistant manager Addie Sotalin ("Sotalin"), Valeria Fernandez ("Fernandez") and Nelsy (last name unknown).

10.      During much of the time that Carter has worked for defendant, he has been subject to a racially hostile work environment.   For example, in or about mid-October 2007, after seeing Carter in a darkened stock room, Sotalin drew a picture of a black figure with the caption "Carter."  A copy of the drawing which is attached hereto as Exhibit A.  In the presence of Vargas and others, Sotalin showed Carter the drawing and said: "Carter, this is how you look in the dark.  I can only see your eyes, teeth, and diamond earring."  Copies of the drawing were then posted throughout the office, including the wall behind Vargas' desk, as Vargas and other employees laughed at Carter.

11.      Carter stated to Sotalin and Vargas, in substance, that the drawing was objectionable and racist.  Upon information and belief, defendant did not discipline Sotalin for this conduct.

12.      Following this incident, Carter's work environment continued to deteriorate.  For example, Vargas, Carter's supervisor, repeatedly referred to Carter by racial epithets such as  "black ass" or "stupid black ass."

13.      In addition, Vargas made the following statements to Carter:

a)      "go get back on the back of the bus you black bitch";

b)      "go back to Africa where your ancestors ran around with no clothes";

c)      "you look like a blackhead, I feel like popping your ass"; and

d)      "you're black that means you're a minority."

14.     Carter's other co-workers also made numerous racially offensive statements to Carter. For example, Nelsy told Carter to "go swing from a tree you slave." On another occasion, Nelsy said to Carter that "just because you're black doesn't mean you get all the privileges" and taunted Carter by singing "you're black, I'm white, you're black, I'm white." Sotalin told Carter that when she went on vacation she was going to get "as dark as you so you won't feel bad."

15.     On January 8, 2008, Carter came to work with a cold. On that day, Vargas instructed Carter to go to a local store and buy cigarettes for her. When Carter returned to the office, he found on his desk another racist drawing depicting a black man with a huge head and oversized lips, a copy of which is attached hereto as Exhibit B. Vargas told Carter that she made the drawing and said: "Carter, this is you with your big black ass head and lips with snot coming out of your nose and your yellow ass eyes."

16.     Someone in the office made numerous photocopies of Vargas' racist drawing and gave them to Fernandez, Nelsy and Sotalin, all of whom colored-in Vargas' racist drawing and wrote in captions such as "Curtis Carter" or "Curtis Carter Loser." Many of those copies, four of which are attached hereto as Exhibit C, were posted throughout the office. Carter repeatedly took down these drawings, but Carter's co-workers would post additional copies in the office.

17.     Throughout the day on January 8, 2008, Carter's supervisor and co-workers, with apparent pride, pointed out the racist drawings to various people who came into the accounting area.

18.    On January 9, 2008, after Carter had taken down all of the drawings from the previous day, Nelsy colored in another copy of the drawing, posted it by her desk, and showed it to people who came into the accounting area.

19.    On January 10, 2008, Carter called Vargas and informed her that he would not be going to work for personal reasons. He then called Anthony Renda ("Renda"), who is the General Manager of Fordham Toyota and, upon information and belief, also a senior executive of BRAM. Carter and Renda agreed to meet the following day at Renda's office in the Bronx.

20.    On January 11, 2008, Carter met with Renda and informed him of the racial harassment described above and provided him with, among other things, copies of the racist pictures made by Vargas and Carter's co-workers.

21.    While Carter was present, Renda called Vargas on a speakerphone and described some of what Carter had told him. Vargas admitted that she had made the recent drawing of Carter and that Sotalin had made the previous one in October 2007. However, Vargas attempted to justify her actions by, among other things, stating that she thought it was okay to "play" like that and falsely stating that Carter had made inappropriate comments toward her.

22.    After Renda hung up the phone with Vargas, he told Carter, among other things, that he did not believe him and that Carter was wasting his time.

23.    Immediately following Carter's complaint to Renda concerning racial harassment, Carter was involuntarily transferred from Fordham Toyota's office in Harlem to its office in the Bronx. Carter complained to Renda that the transfer was retaliation for his harassment complaint. Carter also told Renda that his commute to the Bronx office was

significantly longer than his commute to the Harlem office. Defendant has not taken any action in response to Carter's complaints of retaliation.

24.     On or about January 15, 2008, Renda informed Carter that defendant was investigating his harassment complaint and directed Carter to speak with defendant's investigator, who is an attorney. On or about January 17, 2008, Carter spoke for several hours with defendant's investigator about his complaint.

25.     For approximately two months after Carter spoke with defendant's investigator, Carter received no communication about his complaint or the status of defendant's purported investigation.

26.     In or about mid-March 2008, shortly after Carter's attorney sent a letter to defendant concerning Carter's complaints of racial harassment and retaliation, defendant's investigator requested to meet with Carter again. On March 17, 2008, Carter met with defendant's investigator a second time concerning his complaint.

27.     To date, over three months after Carter complained to Renda about racial harassment and retaliation, Carter has not been told the outcome of defendant's purported investigation.

28.     Vargas, Sotalin, Fernandez and Nelsy all continue to work for defendant in Harlem and, upon information and belief, none of them have been suspended or fired for their discriminatory conduct.

29.     Since being transferred to the Bronx, Carter has been given very little work and has been stripped of almost all of his responsibilities. With rare exception, the only work Carter has been assigned since his transfer to the Bronx is to make photocopies.

30.    Defendant's actions have caused Carter irreparable injury, monetary damages, emotional pain and humiliation.

## FIRST CAUSE OF ACTION

31.    Plaintiff repeats and realleges ¶¶ 1-30 of this Complaint as if set forth herein.

32.    By the acts and practices described above, defendant discriminated against plaintiff on the basis of his race, in violation of Section 1981.

33.    Defendant acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

## SECOND CAUSE OF ACTION

34.    Plaintiff repeats and realleges ¶¶ 1-33 of this Complaint as if set forth herein.

35.    By the acts and practices described above, defendant retaliated against plaintiff on the basis of his race and his protected opposition to race discrimination in violation of Section 1981.

36.    Defendant acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

## THIRD CAUSE OF ACTION

37.    Plaintiff repeats and realleges ¶¶ 1-36 of this Complaint as if set forth herein.

38.    By the acts and practices described above, defendant discriminated against plaintiff on the basis of his race, in violation of the Executive Law.

## FOURTH CAUSE OF ACTION

39.    Plaintiff repeats and realleges ¶¶ 1-38 of this Complaint as if set forth herein.

40.     By the acts and practices described above, defendant retaliated against plaintiff on the basis of his race and his protected opposition to race discrimination, in violation of the Executive Law.

## FIFTH CAUSE OF ACTION

41.     Plaintiff repeats and realleges ¶¶ 1-40 of this Complaint as if set forth herein.

42.     By the acts and practices described above, defendant discriminated against plaintiff on the basis of his race, in violation of the City Law.

43.     Defendant acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

## SIXTH CAUSE OF ACTION

44.     Plaintiff repeats and realleges ¶¶ 1-43 of this Complaint as if set forth herein.

45.     By the acts and practices described above, defendant retaliated against plaintiff on the basis of his race and his protected opposition to race discrimination, in violation of the City Law.

46.     Defendant acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a.     declaring that the acts and practices complained of herein are in violation of Section 1981, the Executive Law and the City Law;

b.     enjoining and permanently restraining these violations of Section 1981, the Executive Law and the City Law;

   c.  directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

   d.  directing defendant to place plaintiff in the position he would be in but for defendant's discriminatory and retaliatory treatment of him, and to make him whole for all earnings he would have received but for defendant's discriminatory and retaliatory treatment, including, but not limited to, wages, bonuses, and other lost benefits;

   e.  directing defendant to pay plaintiff compensatory damages and damages for his mental anguish and humiliation;

   f.  directing defendant to pay plaintiff punitive damages, pursuant to Section 1981 and the City Law, for its intentional disregard of, and/or reckless indifference to, plaintiff's rights;

   g.  awarding plaintiff the costs of this action together with reasonable attorneys' fees, as well as interest; and

   h.  awarding such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated:  New York, New York
        April 21, 2008

                            VLADECK, WALDMAN, ELIAS
                            & ENGELHARD, P.C.

By: _____

                            Kevin T. Mintzer (KM 4741)
                            Attorneys for Plaintiff
                            1501 Broadway, Suite 800
                            New York, New York  10036
                            (212) 403-7300

# EXHIBIT A

209012 v1







# EXHIBIT B

209012 v1



## EXHIBIT C



Curtis Carter



Curtis Carter



Curtis Carter

